[Cite as *State v. Mims*, 2016-Ohio-3228.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | CASE NO. 14 JE 0025 |
| VS. | ) | |
| | ) | OPINION |
| DONALD D. MIMS | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of Common Pleas of Jefferson County, Ohio
Case No. 14 CR 44

JUDGMENT:      Affirmed. Motion granted.

APPEARANCES:
For Plaintiff-Appellee      Attorney Jane Hanlin
Jefferson County Prosecutor
Attorney Jeffrey Bruzzese
Assistant Prosecutor
16001 State Route 7
Steubenville, Ohio 43952

For Defendant-Appellant      Donald D. Mims, Pro-se
#A654-518
P.O. Box 8000
Conneaut, Ohio 44030-8000
Attorney Robert Miller
P.O. Box 166
Wellsburg, West Virginia 26070

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl Waite

Dated: May 31, 2016

DeGENARO, J.

{¶1} Defendant-Appellant, Donald D. Mims, appeals the judgment of the Jefferson County Court of Common Pleas convicting him of two counts of weapons under disability and one count of menacing by stalking and sentencing him accordingly.

{¶2} Appointed appellate counsel filed a no-merit brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.E.2d 493 (1967), and *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (7th Dist.1970), and requested leave to withdraw from the case. Following an order from this court, Mims filed two pro-se briefs, assigning four errors of his choosing.

{¶3} For the following reasons, Mims' pro-se assignments of errors are meritless. Moreover, a thorough review of the case file reveals that there are no other appealable issues, and that the appeal is in fact frivolous. Accordingly, the judgment of the trial court is affirmed and counsel's motion to withdraw granted.

### Facts and Procedural History

{¶4} Mims was originally charged by complaint with five counts: felonious assault, attempted murder, rape, kidnapping and tampering with evidence. Following a preliminary hearing before the county court, the court found that the State failed to prove sufficient probable cause to bind over the attempted murder and rape charges, and thus dismissed those charges. The county court did find sufficient probable cause to bind over the remaining charges.

{¶5} The Jefferson County Grand Jury then indicted Mims on two counts of having a weapon while under a disability, one in violation of R.C. 2923.13(A)(2) (prior convictions of felony offense of violence), and one in violation of R.C. 2929.13(A)(3) (prior felony drug convictions), both third-degree felonies; and one count of menacing by stalking, R.C. 2903.211(A)(1) and (B)(2)(f), with the specification that while committing that offense Mims had a deadly weapon, to wit, a firearm, under his control, a fourth-degree felony. Mims was arraigned pursuant to the indictment, pled not guilty and counsel was appointed. The case proceeded to a jury trial.

{¶6} The following evidence was adduced at trial. Certified copies of Mims'

felony convictions that precluded him from possessing a firearm were admitted into evidence without objection. The State called Officer Dustin Hildebrand who testified he was called to the scene in Yorkville, apprised of the allegations and ordered to go to the Jaycee Manor apartments, in Martins Ferry, Ohio in order to attempt to bring Mims in for questioning. Hildebrand took Mims into custody and drove him to the Yorkville Police Department. They were met by Chief John Morelli and the two officers began to interrogate Mims after reading him his *Miranda* rights and obtaining a written *Miranda* waiver.

{¶7}  During questioning, Mims admitted to being at Jennifer Postlewait's home that morning. He initially denied owning a weapon. However, after being advised that the officers intended to perform a gunshot residue test, Mims admitted that there may be a reason that they would find residue on his hand, namely, that he had fired a semi-automatic weapon in the woods at the Jaycee Manor.

{¶8}  Hildebrand testified that although Mims' hands were swabbed for gunshot residue, the Ohio Bureau of Criminal Investigation would not perform the GSR test as a matter of policy, since the sample was taken more than two hours after the alleged shooting. Accordingly, there was no way to tell for certain whether Mims had gunshot residue on his hands.

{¶9}  Jennifer Postlewait, the victim, testified that she and Mims were friends and were spending time with a few other people at her home in Yorkville, Ohio. As the night went on, Postlewait and Mims were the only adults remaining in Postlewait's home. At some point during the evening, Mims returned to Martins Ferry in order to obtain his cell phone charger before returning to Postlewait's home.

{¶10}  When he returned to Postlewait's home, Mims was carrying a little black case with a firearm inside. Mims took the gun out of the case and sat on Postlewait's couch and played with it by repeatedly emptying the bullets and wiping them off and putting them back into the gun.

{¶11} An argument then ensued because Mims believed Postlewait was engaging in sexual relations with Mims' brother. Mims hit her with a "wad" of cash.

Mims became very angry and told Postlewait that he would "put all the bullets in [her] head." He held the gun to her head and told her that he would kill her. While all of this was happening, Postlewait's three young children were upstairs. During the argument, Mims repeatedly told the victim that he was crazy and he did not care—he would kill her. At one point, he told her he would choke her to death. He also told her he would splatter her brains all over the living room wall.

{¶12} Mims then held the gun to the victim's head for a few seconds and fired it next to her head. Postlewait did not actually see Mims pull the trigger because, at the time he fired the weapon, she was face down on the couch, covering her head with her hands. After he fired the gun, Mims said to Postlewait: "I know you smell that, b*tch. Aren't your ears ringing?" Postlewait testified she was "petrified" by this. Police later found a shell casing in the trash can; Postlewait said Mims had placed it there.

{¶13} After the gun was fired, Mims told her to lock the door and that if someone were to knock, she must hide and not answer it.  Postlewait then went upstairs to try to calm one of her daughters. Mims came upstairs and knocked everything off of Postlewait's dresser, jumped on her bed, lifted her shirt and bit her breast in front of the four-year-old child. Postlewait was treated at the emergency room for her injury and a picture of the injury was admitted into evidence.

{¶14} After Postlewait settled her daughter upstairs, she and Mims returned downstairs. Postlewait said she did everything she could to keep Mims calm and to make him believe everything was fine, in the hopes that he would leave her alone. Mims continued to be loud and aggressive and she was still afraid. At some point during the night, Mims made it known that he wanted to have sex with her and she said she permitted it in order to make him think everything was fine and so that he would calm down. Postlewait stated that she did not call the police at any point during this evening because Mims was following her everywhere and she was fearful of what he would do if he saw her call the police. Later in the night, Mims threw a cell phone at the victim which hit her in the leg before it shattered. This caused her injury,

which required treatment at the emergency room; a photograph of this injury was admitted into evidence. Mims also threw children's toys at her. The whole ordeal lasted nine or ten hours.

**{¶15}** Eventually, Postlewait was able to contact her friend Ashley Parsons, who came to the house. Postlewait rode a bus to Parsons' house with her three children. Mims accompanied them for part of the bus ride; he initially put the gun in Postlewait's diaper bag and later held it between his legs as Postlewait, Parsons, and the children exited the bus. When they arrived at Parsons' house, they called the police. Postlewait said she was still upset at that point and was crying hysterically.

**{¶16}** Several phone calls between Mims and Postlewait, which occurred while Mims was jailed for the instant offenses, were played to the jury during trial and transcribed by the court reporter so as to be included in the trial transcript. During these calls, Mims asked Postlewait to change her story and commit perjury. He also admitted he bit Postlewait's breast.

**{¶17}** On cross, Postlewait admitted that on the night of the incident herein, she had consumed between four and six shots of alcohol. She also agreed that Mims left her home to go to the store in the morning following the incident and yet she did not call the police or lock Mims out of her house. Postlewait admitted that she was untruthful to police in the past; that she switched seats with Mims during a traffic stop and "took a DUI for him."

**{¶18}** Ashley Parsons testified that she was not 100 percent certain that she saw Mims with a gun that day. She admitted she had developed a friendship with Mims' brother since the incident, but claimed it was not affecting her testimony. The prosecutor presented her with her prior statements to police and her grand jury testimony where she stated unequivocally that she saw Mims with a gun that day.

**{¶19}** The State also presented the testimony of Officer George Shreve. He testified that a search was conducted of the apartment where Mims was staying (pursuant to consent of the other occupant), but that no guns or drugs were found. Ed Lulla of Ohio BCI then testified about the science of gunshot residue testing and

explained that the agency would not perform a test if more than two hours had elapsed since the alleged shooting.

**{¶20}** Yorkville Police Chief John Morelli testified that Parsons' statement to police immediately after the incident "absolutely" differed from her trial testimony. He also noted that Mims' brother was in the courtroom during the trial observing Parson as she testified.

**{¶21}** Further, Morelli testified that Postlewait was distraught, "crying, shaking, just incoherent, really[,]" when he arrived at Parsons' with the other officers in response to the incident. Morelli said Parsons seemed "pretty upset," as well.

**{¶22}** Morelli was the one who found the shell casing in the trash at Postlewait's house. In her basement, he also discovered bullet fragments. He admitted police could not definitively find where the round entered the floor. Morelli was present for the interrogation of Mims. He said it was recorded, but that there was a problem with the audio on the file and that the part where Mims admitted to having a firearm was not playable.

**{¶23}** The State then rested and Mims made a Crim.R. 29 motion for acquittal, which was overruled by the trial court. The defense declined to present witnesses. Out of the presence of the jury, the trial court advised Mims of his right to take the stand and his right to remain silent. Mims elected not to testify.

**{¶24}** After considering all of the evidence, the jury found Mims guilty of two counts of having a weapon while under a disability, R.C. 2923.13(A)(2) and (A)(3), and one count of menacing by stalking,  R.C. 2903.211(A)(1) and with the specification that while committing that offense Mims had a deadly weapon, to wit, a firearm, under his control. R.C. 2903.11B)(2)(f).

**{¶25}** Following a sentencing hearing, the trial court merged the two weapons charges, and the State elected to have the trial court sentence Mims on the first weapons charge, count one (R.C. 2923.13(A)(2)).

**{¶26}** After considering, among other things, the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under

R.C. 2929.12, and after making findings relative to R.C. 2929.13 and R.C. 2929.14(C)(4), the trial court sentenced Mims to a prison term of 36 months on the weapons charge and 18 months on the aggravated menacing charge to run consecutive to one another for an aggregate prison term of 54 months. The trial court imposed 3 year discretionary term of post-release control and granted Mims 91 days of jail-time credit.

**{¶27}** Mims filed a timely notice of appeal on June 27, 2014. Appointed appellate counsel filed a no merit brief, pursuant to *Anders, supra*, 386 U.S. 738. Mims filed two pro-se briefs, listing a total of four assignments of error. The State thereafter filed a response brief.

### Sufficiency and Manifest Weight

**{¶28}** Mims' first and third pro-se assignments of error raise similar issues and will be discussed together. They assert, respectively:

> The State adduced insufficient evidence to support Appellant's convictions and that the convictions are contrary to the manifest weight of the evidence in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.

> The trial court erred to the prejudice of the Appellant's [sic] and committed plain error under Crim.R. 52(B) by overruling Appellant's motion for judgment of acquittal.

**{¶29}** Mims' third pro-se assignment of error, which challenges the trial court's decision to overrule his motion for judgment of acquittal, can be construed as a sufficiency of the evidence argument. Mims also raises sufficiency within his first pro-se assignment of error.

**{¶30}** A challenge to the sufficiency of the evidence tests whether the state has properly discharged its burden to produce competent, probative, evidence on

each element of the offense charged." *State v. Petefish*, 7th Dist. No. 10 MA 78, 2011–Ohio–6367, ¶ 16. Thus, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

**{¶31}** Conversely, "[w]eight of the evidence concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). A conviction will only be reversed as against the manifest weight of the evidence in exceptional circumstances. *Id.* This is so because the triers of fact are in a better position to determine credibility issues, since they personally viewed the demeanor, voice inflections and gestures of the witnesses. *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶32}** Thus, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387. However, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. No. 99 CA 149, 2002–Ohio–1152, *2, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Under these circumstances, the verdict is not against the manifest weight and should be affirmed.

**{¶33}** Mims was convicted of two counts of having weapons under a disability, one under R.C. 2923.13(A)(2) and the other under R.C. 2929.13(A)(3) which provide,

respectively:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

R.C. 2923.13(A)(2) and (A)(3).

**{¶34}** Mims was also convicted of one count of menacing by stalking under R.C. 2903.211(A)(1), which provides:

> No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's mental distress, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

**{¶35}** The offense was elevated to a fourth-degree felony pursuant to the following specification:

> Menacing by stalking is a felony of the fourth degree if any of the following applies: * * *
>
> (f) While committing the offense under division (A)(1) of this section or a violation of division (A)(3) of this section based on conduct in violation of division (A)(1) of this section, the offender had a deadly weapon on or about the offender's person or under the offender's control. Division (B)(2)(f) of this section does not apply in determining the penalty for a violation of division (A)(2) of this section or a violation of division (A)(3) of this section based on conduct in violation of division (A)(2) of this section.

R.C. 2903.211(B)(2)(f).

**{¶36}** First, with regard to the weapons charges, there was more than sufficient evidence presented to support the convictions. Postlewait testified that Mims possessed a gun during the incident. Mims himself admitted to police that he possessed a gun. Certified copies of Mims' felony convictions that precluded him from possessing a firearm were admitted into evidence without objection. The weapons convictions were not against the manifest weight of the evidence; there was overwhelming evidence of Mims' guilt.

**{¶37}** With regard to the menacing by stalking, and the specification, Postlewait testified that Mims repeatedly threatened her with a gun over a nine to ten hour period and stated that she was "petrified." Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support this conviction.

**{¶38}** Further, the menacing by stalking conviction with the specification is not against the manifest weight of the evidence. The jury was in the best position to view the credibility of the witnesses. *See State v. Hill*, 75 Ohio St.3d at 204. Further,

Postlewait's extensive testimony about the incident was corroborated by physical evidence, namely photographs of her injuries, the shell casing found in the trash and the bullet fragments found in the basement. Police also described her demeanor that morning as distraught, crying, and shaking. Based upon the evidence admitted at trial, as outlined above, the jury did not lose its way in convicting Mims of this offense either. Accordingly, Mims' first and third pro-se assignments of error are meritless.

### Ineffective Assistance of Counsel

{¶39} In his second pro-se assignment of error, Mims asserts:

> Appellant was denied effective assistance of counsel at trial in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, section 10 of the Ohio Constitution.

{¶40} To establish ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The defendant bears the burden of proving counsel's alleged ineffectiveness, since Ohio law presumes a licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). If a defendant cannot show how counsel's errors undermined the reliability of the court's decision, there is no basis for finding that his right to counsel has been violated. *State v. Hancock*, 108 Ohio St.3d 57, 2006–Ohio–160, 840 N.E.2d 1032, ¶ 109; *Strickland* at 693.

{¶41} Mims fails to point to any specific incident where trial counsel was

ineffective. His brief makes very vague and general allegations. Upon review of the record, counsel was constitutionally effective. Accordingly, Mims' third pro-se assignment of error is meritless.

## Sentencing

{¶42} In his fourth and final pro-se assignment of error, Mims asserts:

Whether the trial court's sentence imposed on appellant was clearly and convincingly contrary to law and/or an abuse of its discretion.

{¶43} The Ohio Supreme Court recently resolved the question of what standard of review to apply to felony sentences challenged on appeal: "Applying the plain language of R.C. 2953.08(G)(2), * * * an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, Slip Opinion 2016-Ohio-1002, ¶ 1.

{¶44} Here, Mims was afforded his allocution rights pursuant to Crim.R. 32(A)(1); the trial court asked him directly if he had anything to say before it pronounced sentence. The trial court properly notified Mims that upon his release he could be subject to a discretionary post-release control term of up to three years and notified him about the ramifications of violating post-release control. R.C. 2967.28(C).

{¶45} The trial court properly imposed jail-time credit of 91 days along with future custody days while the defendant awaits transportation to the state penal institution.

{¶46} The trial court correctly merged the two weapons charges since they stemmed from possession of the same weapon and same set of circumstances. The State elected to have the trial court sentence Mims on the first weapons charge, count one. The sentence for the two remaining charges, 54 months, fell within the permitted range (12 to 54 months) for a third-degree felony and a fourth-degree

felony. R.C. 2929.14(A)(3)(b).

**{¶47}** Mims' main argument is that the trial court allegedly failed to state that it considered and weighed the various factors required by R.C. 2929.12 when imposing his sentence. This argument is wholly meritless. As an initial matter, contrary to Mims' contentions, "it is not required that the sentencing court state on the record at the sentencing hearing that it has considered these statutes." *State v. Bellard*, 7th Dist. No. 12 MA 97, 2013–Ohio–2956, ¶ 11. "[E]ven in the case of a completely silent record—no mention of the factors in the entry or the hearing—this court has held that 'it will be presumed that the trial court considered the relevant factors in the absence of an affirmative showing that it failed to do so unless the sentence is strikingly inconsistent with the applicable factors.' " *Id.*, quoting *State v. James*, 7th Dist. No. 07 CO 47, 2009–Ohio–4392, ¶ 50 (citation omitted). *See also State v. Parsons*, 7th Dist. No. 12 BE 11, 2013–Ohio–1281, ¶ 12.

**{¶48}** Moreover, here the trial court provided an *extensive* on-record analysis of the sentencing factors contained in R.C. 2929.12.

**{¶49}** The imposition of a prison sentence, as opposed to a community control sanction for the fourth-degree felony was proper. R.C. 2929.13(B)(1)(a) provides in relevant part:

> Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction of at least one year's duration if all of the following apply:
>
> (i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

**{¶50}** Here, Mims was convicted of several prior felonies, and thus community control was not mandatory. *See also State v. Esmail*, 7th Dist. No. 11 CO 35, 2013–Ohio–2165, ¶ 35.

**{¶51}** R.C. 2929.13(B)(1)(b) goes on to state in relevant part:

The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

(i) The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.

(ii) If the offense is a qualifying assault offense, the offender caused serious physical harm to another person while committing the offense, and, if the offense is not a qualifying assault offense, the offender caused physical harm to another person while committing the offense.

R.C. 2929.13(B)(1)(b)(i) and (ii).

**{¶52}** During the sentencing hearing, the trial court made the following findings:

**THE COURT**: All right. Now, since the menacing by stalking is a felony of the fourth degree then I have to consider a couple other factors.

You had prior - - previously been convicted of a felony offense and, therefore, I do not find that a community control sanction would be appropriate.

I do find that you did commit the offense while having a firearm on or about your person and that in committing the offense you attempted to cause or made an actual threat of physical harm and that you did that with a deadly weapon.

So, I'm going to find that a prison sentence is appropriate in each of these two cases.

{¶53} Finally, the imposition of consecutive sentences was proper. Based on R.C. 2929.14(C)(4), a trial court is required to make three findings before imposing consecutive sentences: 1) consecutive sentences are necessary to protect the public from future crime or to punish the defendant; 2) consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and the danger the defendant poses to the public; and 3) one of three alternative findings set out in subsections, namely that: a) the defendant was under post-release control, specified statutory community control, or awaiting trial or sentencing; b) the offenses were committed during a course of conduct and the harm was so great/unusual that a single term does not reflect the seriousness of the defendant's conduct; or c) the defendant's criminal history demonstrates the need to protect the public from future crime by the defendant. R.C. 2929.14(C)(4).

{¶54} Recently, in *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659, the Supreme Court of Ohio held that the findings supporting consecutive sentences must be made both at the sentencing hearing and in the entry. *Bonnell* at ¶ 37. However, a trial court need not state reasons to support its findings nor is it required to use any "magic" or "talismanic" words, so long as it is apparent that the court conducted the proper analysis. *State v. Jones*, 7th Dist. No. 13 MA 101, 2014-Ohio-2248, ¶ 6; *see also Bonnell* at ¶37. Post-*Bonnell*, we may liberally review the entirety of the sentencing transcript to discern whether the trial court made the requisite findings. *Bonnell* at ¶29. However, as demonstrated by the outcome in *Bonnell*—the Supreme Court reversed and remanded Bonnell's sentence because the trial court failed to make a proportionality finding—there are limits to that deference. *Bonnell* at ¶ 33-34. After a reviewing court determines the findings have been made, the court "must also determine whether the record contains evidence in support of the trial court's findings." *State v. Correa*, 7th Dist. 13 MA 23, 2015-Ohio-3955, ¶ 76, citing *Bonnell* at ¶29.

{¶55} Here the trial court stated the following during the sentencing hearing:

Now, then I'm also going to find that as to the menacing by

stalking that that is the worst form of the offense.

I'm going to consider the length of time that this went over, from late - - it was around midnight or something till [sic] the early hours of the morning and finally when she left to get on the bus, that there was serious physical harm which was caused which was the gash in her leg which required emergency room treatment and the bite on her breast which required treatment as well and that you fired a firearm in close proximity with young children in the residence. Therefore, I think that was the worst form of the offense.

I'm also going to find that consecutive sentences are necessary because I'm going to find that you have an extensive criminal history, that you have served at least three prior prison terms, that you really have not accepted responsibility for your actions and that no single term is - - would adequately reflect the seriousness of your offense.

**{¶56}** The sentencing entry states the following:

Further, the Court finds that consecutive sentences are necessary to protect the public, to punish the defendant, are not disproportionate and the harm inflicted (mentally and physically) is so great that a single term does not adequately reflect the seriousness of the conduct and, further, that the defendant's criminal history (as reflected above) shows that such is needed to protect the public.

**{¶57}** The trial court made sufficient consecutive sentence findings, *see* R.C. 2929.14(C)(4) and (C)(4)(b), and the record supports those findings. Accordingly, for all of the above reasons, Mims' sentence was not contrary to law, and his fourth and final pro-se assignment of error is meritless.

**Independent Review**

**{¶58}** Since this case is before this court pursuant to a no merit brief and

subsequently pro-se appellate briefs, we are required, pursuant to *Anders,* 386 U.S. 738, to thoroughly and independently review the record to determine that counsel made a diligent effort to find an appealable, nonfrivolous issue. *See also Toney*, 23 Ohio App.2d 203.

**{¶59}** There were no pretrial issues. Further, Mims was brought to trial well within the time specified by R.C. 2945.71(C)(2) and (E). He was arrested and tried within the 90 day time-frame, even before accounting for potential tolling events. There were no errors regarding jury selection, evidentiary rulings, or jury instructions, nor was there any prosecutorial misconduct.

**{¶60}** The pro-se assignments of error and any related issues are meritless, as discussed above. For the foregoing reasons, counsel's motion to withdraw is granted, and the judgment of the trial court is affirmed.

Donofrio, P. J., concurs.

Waite, J., concurs.